**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **GREGORY CARTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:15-04984** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is United States' "Motion to Dismiss For Lack of Subject Matter Jurisdiction" (Document No. 5), filed on June 16, 2015. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the United States in moving to dismiss. (Document No. 16.) Plaintiff filed his Response in Opposition on December 4, 2015. (Document No. 21.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

On April 21, 2015, Plaintiff, by counsel, Matthew Edward DeVore, filed his Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.* (Document No. 1.) Plaintiff names the United States of America as the Defendant. (Id.) In his Complaint, Plaintiff alleges that prison staff at FCI Beckley were negligent when they allowed his cell to flood with water on May 3, 2014. (Id., pp. 2 - 3.) Plaintiff alleges that upon awaking and discovering the condition of the cell, Plaintiff

immediately informed Correctional Officer ["CO"] Lagowski and requested that his cell door be opened so the water could drain. (Id., p. 3.) Plaintiff acknowledges that CO Lagowski "responded that the Plaintiff would have to wait until shift change before the water could be drained." (Id., p. 3.) Plaintiff contends that CO Lagowski "then left, leaving Plaintiff in the flooded cell for several hours." (Id.) Plaintiff alleges that when he attempted to make his way across the cell to use the toilet, his "cane slipped out from under him as the result of the standing water on the cell floor." (Id.) Plaintiff claims that he injured his ankle and back as a result of the fall. (Id.) Plaintiff explains that he pulled himself onto his bed, and requested his cellmate press the in-cell "distress button." (Id.) Plaintiff states that he informed CO Lagowski that he needed medical attention, but CO Lagowski left without assisting him. (Id.) Plaintiff asserts that "[w]hen Officer Lagowski returned, he informed Plaintiff that the Lieutenant on duty wanted to see the Plaintiff in his office." (Id.) Plaintiff claims that he informed CO Lagowski that he did not feel capable of walking to the Lieutenant's office due to his injuries, but CO Lagowski gave Plaintiff a direct order to comply. (Id.) Plaintiff asserts that he "fell a second time as a result of attempting to stand and walk while injured in compliance with Office Lagowski's order." (Id.) Plaintiff states that he fell into his wall locker, injuring his neck. (Id.)

Plaintiff alleges that after his second fall, CO Lagowski again ordered him to walk to the Lieutenant's office. (Id., p. 4.) Plaintiff claims that when he was unable to comply, CO Lagowski left and returned with another correctional officer. (Id.) Plaintiff acknowledged that the two correctional officers assisted Plaintiff into a wheelchair. (Id.) Plaintiff, however, complaints that "[r]ather than taking Plaintiff directly to medical personnel, Officer Lagowski and the other correctional officer wheeled Plaintiff to the Lieutenant's office." (Id.) Plaintiff alleges that he

was "ridiculed, falsely accused of fabricating his injuries, and told by the Lieutenant that he would be sent to the Special Housing Unit as punishment for his failure to obey Office Lagowski's order that he walk to the Lieutenant's office."[1] (Id.) Plaintiff, therefore, states that "[a]s a direct and proximate result of negligent conduct of BOP employees, Plaintiff suffered damages including physical injury, pain and suffering, and emotional distress and harm. (Id.)

On June 16, 2015, the United States filed its "Motion to Dismiss For Lack of Subject Matter Jurisdiction" and Memorandum in Support. (Document Nos. 5 and 6.) Specifically, the United States argues that "Plaintiff's claim must be dismissed because his injury is considered *de minimis* under the FTCA." (Id.) As Exhibits, the United States attached the following: (1) The Declaration of Sharon Wahl (Document No. 5-1, pp. 1 - 3.); (2) A copy of Administrative Tort Claim No. TRT-MXR-2014-05194 (Id., pp. 5 - 12.); (3) A copy of the denial letter from the United States Department of Justice regarding Administrative Tort Claim No. TRT-MXR-2014-05194 (Id., pp. 14 - 15.); (4) A copy of SENTRY "Inmate History Quarters" (Id., p. 17.); (5) A copy of Plaintiff's pertinent medical records (Id., pp. 19 - 126.); (6) A copy of the "Tort Claim Investigation" (Id., pp. 128 - 132.); and (7) A copy of Incident Report Number 2578776 (Id., pp. 134 - 135.).

On August 12, 2015, Mr. DeVore filed a Motion to Withdraw as Counsel. (Document No. 10.) By Order entered on August 14, 2015, United States District Judge Irene C. Berger

---

[1]   An Incident Report dated May 3, 2014, indicates that Plaintiff was charged with Refusing an Order and Insolence in violation of Sections 307 and 312 of Prohibited Act Code. (Document No. 5-1, pp. 134-35.) CO Lagowski described the incident as follows (*Id.*):

> At 06:20 a.m., I instructed inmate Carter, Gregory #58944-060 to exit cell 223 in Oak B Lower, he refused then called me a "f**king a**hole." I repeated to him to exit then cell which he refused. After contacting the Operations Lieutenant, he was escorted out of the unit by the Compound Officers. There were no further incidents.

granted Mr. DeVore's Motion. (Document No. 11.) Judge Berger further directed that "Plaintiff's new counsel file an appearance, or the Plaintiff shall notify the Court of his intent to proceed *pro se*, within thirty (30) days of the entry of this Order." (Id.) On August 24, 2015, Plaintiff filed his "Motion to Continue Pro-Se." (Document No. 13.) By Order entered on September 3, 2015, Judge Berger granted Plaintiff's "Motion to Continue Pro-Se" and referred the matter to United States Magistrate Judge R. Clarke VanDervort submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 14.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on September 4, 2015, advising him of the right to file a response to the United States' "Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction." (Document No. 16.) On December 4, 2015, Plaintiff filed his Response in Opposition. (Document No. 21.) As Exhibits, Plaintiff attaches the following: (1) A copy of his MRI report (Id., pp. 7 - 8.); (2) A copy of a letter from Plaintiff's former counsel dated July 22, 2015 (Id., p. 9.); (3) A copy of Plaintiff's pertinent medical records (Id., p. 10.); (4) A copy of a statement from Inmate Clifton Perry (Id., p. 11.); and (5) A copy of the Incident Report dated May 4, 2014 (Id., p. 12.).

By Order entered on January 20, 2016, the above case was referred to United States Magistrate Jude Omar J. Aboulhosn for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 23.)

## SUMMARY OF MEDICAL RECORDS

Soon after Plaintiff's arrival at FCI Beckley, Plaintiff was evaluated by Nurse Practitioner ["NP"] James Ellis on December 30, 2013. (Document No. 5-1, pp. 19 - 29.) During

his evaluation, Plaintiff complained of join pain. (Id.) Upon examination, NP Ellis noted that Plaintiff's right ankle was bruised and tender due to a "recent acute sprain/strain injury prior to incarceration." (Id., p. 26.) It was noted that Plaintiff admitted "he was 'drinking' and fell down." (Id.) NP Ellis ordered x-rays of Plaintiff's right ankle. (Id., p. 28.) On the same day, Dr. Dominick McLain evaluated Plaintiff for a preventive health screening. (Id., pp. 30 - 36.) Plaintiff complained of back, neck, and right ankle pain. (Id.) Dr. McLain noted that Plaintiff stated "he has a compensation injury from the State of Ohio with chronic neck and back pain which occurred prior to being incarcerated about 2 months ago." (Id., p. 32.) Dr. McLain further noted that Plaintiff stated that he injured his ankle two days prior to arriving at FCI Beckley. (Id.) Dr. McLain examined Plaintiff noting "significant swelling to the right ankle both medially and laterally, decreased range of motion due to pain, pain along both the medial and lateral malleolus with exam, good distal pulses." (Id., p. 33.) Dr. McLain ordered x-rays of Plaintiff's neck and lower back and prescribed Ibuprofen 800 mg. (Id., pp. 34 - 35.)

The x-rays of Plaintiff's right ankle, lower back, and neck were performed on January 8, 2014. (Id., pp. 103 -110.) All x-rays were negative except for mild degenerative disc disease in the lumbar and cervical spine. (Id.) On January 9, 2014, Plaintiff was evaluated by an orthopedic surgeon. (Id., pp. 37 - 40, 111 - 112.) Plaintiff was given an ankle brace and a crutch. (Id.) On January 22, 2014, Plaintiff reported to sick call for a follow-up regarding his right ankle pain. (Id., pp. 42 - 45.) Plaintiff complained that he still had swelling and pain in his right ankle. (Id.) Plaintiff rated his pain as a 6 on a scale to 10. (Id.) Plaintiff was examined by Physician Assistant ["PA"] Joe Cooper, who noted that Plaintiff had a limited range of motion and swelling of his right ankle. (Id.) PA Cooper prescribed Ibuprofen 800 mg and ordered an MRI. (Id.) On

February 6, 2014, Plaintiff was examined by an orthopedic surgeon. (<u>Id.</u>, pp. 46 and 113.) Plaintiff turned his crutch in on March 7, 2014, and was issued a walking cane. (<u>Id.</u>, p. 47.) On March 28, 2014, Plaintiff was evaluated during a chronic care visit. (<u>Id.</u>, pp. 48 - 53.) Dr. McLain noted that Plaintiff's "right ankle remains swollen and painful" and "he is scheduled for an MRI." (<u>Id.</u>, p. 49.) Dr. McLain prescribed Ibuprofen 800 mg and Amitriptyline 50 mg as treatment for Plaintiff's back, neck, and ankle pain. (<u>Id.</u>, p. 51.)

On May 3, 2014, Plaintiff was evaluated following his complaint that he had fallen twice in his cell due to the cell being flooded with water. (<u>Id.</u>, pp. 54 - 56.) Plaintiff complained he "fell and hurt [his] right ankle" and his "neck hurts from hitting [his] head." (<u>Id.</u>) RN Marti Owens examined Plaintiff's head and ankle noting no significant findings or apparent distress other than chronic swelling to the right ankle. (<u>Id.</u>) Specifically, RN Owens noted the following concerning Plaintiff's head and neck: "no visible injuries to the inmate's head," "no redness, skin intact, no hematoma," and "no decrease in range of motion." (<u>Id.</u>) RN Owens noted the following concerning Plaintiff's right ankle: swelling to the medial ankle, "no bruising or redness," "decreased active range of motion," and "unable to tolerate attempts of passive range of motion." (<u>Id.</u>) RN Owens ordered x-rays of Plaintiff's right ankle and issued an ACE wrap. (<u>Id.</u>)

On May 28, 2014, Plaintiff reported to sick call complaining of neck and ankle pain since his fall on May 3, 2014. (<u>Id.</u>, pp. 57 - 58.) Specifically, Plaintiff stated that the "pain in his neck and ankle areas is worse and more stiff in the evenings and tends to get somewhat better as the day progresses." (<u>Id.</u>) Plaintiff rated his pain as a 6 on a scale to 10. (<u>Id.</u>) Plaintiff was examined by PA Cooper, who noted that there was limited range of motion in the C-spine with extension,

flexion, side bending, and axial rotation secondary to pain. (Id.) There was no swelling. (Id.) PA
Cooper noted that the MRI of Plaintiff's right ankle had been approved and was pending. (Id.)
PA Cooper's assessment was neck strain/sprain. (Id.) PA Cooper prescribed Prednisone 60 mg
and instructed Plaintiff's to apply warm compresses to the area of pain. (Id.) PA Cooper further
ordered x-rays of Plaintiff's back. (Id.)

A repeat x-ray of Plaintiff's right ankle was performed on June 3, 2014, and revealed
negative findings. (Id., p. 115.) A repeat x-ray of Plaintiff's back was conducted on June 17,
2014, which again revealed negative results except for mild degenerative disc disease. (Id., p.
118.) The MRI of Plaintiff's right ankle was performed on July 7, 2014. (Id., p. 119.) The MRI
revealed tenosynovitis with no evidence of complete tendon disruption, no ligamentous
disruption, no acute fracture, and diffuse soft tissue swelling. (Id.)

On July 11, 2014, Plaintiff was evaluated by PA Cooper during a chronic care visit. (Id.,
pp. 59 - 64.) It was noted that Plaintiff had a history of chronic joint pain, especially right ankle
pain. (Id.) Plaintiff rated his pain as a 5 on a scale to 10. (Id.) PA Cooper noted that Plaintiff had
recently had x-rays and an MRI of his ankle. (Id.) PA Cooper renewed Plaintiff's prescriptions
for Amitriptyline and Ibuprofen. (Id., p. 61.) On July 21, 2014, Plaintiff reported to sick call
complaining of continued right ankle pain and swelling. (Id., pp. 65 - 67.) Plaintiff rated his pain
as a 5 on a scale to 10. (Id.) PA Cooper reviewed Plaintiff's MRI results noting tenosynovitis,
but otherwise unremarkable. (Id.) PA Cooper examined Plaintiff noting that his right ankle had
mild swelling and normal range of motion. (Id.) PA Cooper advised Plaintiff to engage in RICE
therapy (Rest, Ice, Elevation, and Compression), along with taking Ibuprofen. (Id.) Plaintiff was
instructed to follow-up in one weeks if symptoms did not improve. (Id.)

7

On September 16, 2014, Plaintiff reported to sick call complaining of continued pain and swelling of his right ankle that "has been persistent since incarceration." (Id., pp. 71 - 73.) Plaintiff stated that he "tried to ice and elevate at night as well as taking Motrin." (Id.) Plaintiff rated his pain as a 6 on a scale to 10. (Id.) Plaintiff was examined by PA Fain, who noted "minimal right ankle swelling which is slightly tender to touch" and "decreased dorsi-flexon due to pain but otherwise has good range of motion." (Id.) An orthopedic consult was requested. (Id.) On October 2, 2014, Plaintiff was evaluated by an orthopedic surgeon. (Id., pp. 80 and 121.) Plaintiff was diagnosed with tendonitis of the right foot and ankle. (Id.) The orthopedic surgeon ordered an athletic brace and stated that he would recommend an injection. (Id.)

On November 24, 2014, Plaintiff reported to sick call complaining of "worsening pain despite use of an ankle brace and cane." (Id., pp. 81 - 82.) PA Fain noted that Plaintiff had a history of chronic right ankle pain, which was being followed by orthopedics. (Id.) PA Fain advised Plaintiff that he would reschedule him an appointment with the orthopedic surgeon for possible injection. (Id.) Plaintiff was seen by the orthopedic surgeon on November 26, 2014. (Id., pp. 83 and 123.) Plaintiff was given a steroid injection and instructed to continue wearing the ankle brace. (Id.)

On January 15, 2015, Plaintiff was evaluated by PA Fain during a chronic care visit. (Id., pp. 85 - 91.) PA Fain noted that Plaintiff had a history of arthritis in multiple joints and chronic pain of the right ankle. (Id.) Plaintiff stated that he did not feel that the injection improved his symptoms. (Id.) PA Fain examined Plaintiff noting tenderness to the ankle joint, no significant swelling, and decreased range of motion. (Id.) An orthopedic consult was requested. (Id.) Plaintiff was evaluated by an orthopedic surgeon on February 23, 2015, who recommended an

EMG for tarsal tunnel syndrome. (Id., pp. 96, 98, and 125.) On June 1, 2015, Plaintiff reported to sick call complaining of continued right ankle pain. (Id., pp. 99 - 101.) Plaintiff rated his pain as a 3 on a scale to 10. (Id.) PA Fain stated that Plaintiff had "not been compliant with wearing his ankle brace and he discussed in detail today the importance of compliance with his treatment." (Id.) PA Fain noted that the EMG would be scheduled as recommended by the orthopedic surgeon. (Id.) PA Fain further noted that Plaintiff became agitated and walked out after being examined. (Id.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

## DISCUSSION

In its Motion, the United States argues that this Court lacks subject matter jurisdiction because Plaintiff's alleged injuries are considered *de minimis* under the FTCA. (Document Nos. 6 and 7.) Specifically, the United States contends that Plaintiff alleges injury to his ankle, neck and back as a result of his fall on May 3, 2014. (Document No. 6, pp. 12 - 13.) The United States, however, argues that Plaintiff's medical records do not support his claim of any head/neck injury. (Id.) Concerning Plaintiff's alleged ankle injury, the United States notes that Plaintiff had "a significant ankle injury when he arrived at FCI Beckley, and there is no clear evidence of new injury or even aggravation to the injured ankle caused by his alleged fall." (Id.)

Finally, the United States argues that Plaintiff may not recover for emotional distress "because he cannot meet the physical injury requirement of the FTCA." (Id.)

In Response, Plaintiff argues that the United States' Motion should be denied. (Document No. 21.) First, Plaintiff asserts that "Officer Lagowski acted callously, deliberately and recklessly in regards to Inmate Carter's safety." (Id., p. 2.) Plaintiff disputes that CO Lagowski shut off the water. (Id.) Specifically, Plaintiff explains that he was able to flush the toilet and wash his hands. (Id.) Plaintiff contends that "a reasonable person would not have left people in a cell with every area of the cell immersed in water." (Id.) Plaintiff, therefore, concludes that CO Lagowski clearly put Plaintiff's safety at risk and "attempted to 'cover up' his actions by willfully falsifying his report." (Id.) Plaintiff further disputes that he disobeyed a direct order. (Id.) Next, Plaintiff argues that his May 3, 2014, injury occurred approximately five months after his pre-incarceration injury. (Id., p. 4.) Plaintiff argues that prior to his fall, his "ankle was on the road to recovery" and "it was not swollen." (Id.) Plaintiff argues that following his fall, his ankle remains swollen and he is required to "use a cane a lot of the time." (Id.) Plaintiff further concludes that his MRI "showed damage to [his] ankle," and "there is no way those injuries that the MRI showed in July of 2014, could have been for an injury that happened almost 9 months ago." (Id.) Finally, Plaintiff contends that he has received "sub-standard" medical care. (Id., p. 5.)

A plaintiff's FTCA claim must fit into one of the limited areas where Congress waived sovereign immunity. Ali v. Federal Bureau of Prisons, 552 U.S. 214, 215, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008); also see Treasurer of New Jersey v. United States Department of Treasury, 684 F.3d 382 (3rd Cir. 2012)("Without a waiver of sovereign immunity, a court is without subject

matter jurisdiction over claims against federal agencies or officials in their official capacity.")

An inmate "can sue under the FTCA to recover damages from the United States Government for

personal injuries sustained during confinement in a federal prison, by reason of the negligence of

a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805

(1963). Specifically, the FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to
> tort claims, in the same manner and to the same extent as a private individual
> under like circumstances, but shall not be liable for interest prior to judgment or
> for punitive damages.

There are, however, exceptions to the FTCA's waiver of sovereign immunity. Pertinent to the

instant case, Section 1346(b)(2) provides as follows:

> No person convicted of a felony . . . while serving a sentence may bring a civil
> action against the United States . . . for mental or emotional injury suffered while
> in custody without a prior showing of physical injury.

28 U.S.C. § 1346(b)(2). Although the FTCA does not define "physical injury," courts have held

that the "physical injury" need not be significant, but it must be more than *de minimis*. See

Calderson v. Foster, 2007 WL 1010383 (S.D.W.Va. March 30, 2007)(noting that 42 U.S.C. §

1997e(e) is a related statute, which is not satisfied by a *de minimis* injury), aff'd, 264 FedAppx.

286 (4th Cir. 2008); also see Tsosie v. Bureau of Prisons, 2012 WL 4484935, * 4 (M.D.Pa. Sept.

27, 2012)(*de minimis* physical injuries "are insufficient to maintain a viable FTCA claim");

Owens v. United States, 2012 WL 6057126, * 5 (E.D.N.C. Dec. 6. 2012)("in order to prevail in a

negligence action, [a plaintiff] must offer evidence of the essential elements of the negligence"

and must show that his injury is "more than *de minimis*"); Hornes v. United States, 2007 WL

1463028, * 11 (N.D.W.Va. May 17, 2007)(dismissing plaintiff's tort and constitutional claim for

mental or emotional damages where plaintiff could not "show a physical injury or that his claim

[was] more than *de minimis*"). A plaintiff bears "the burden of proof to show an unequivocal waiver of sovereign immunity exists and to show that none of the FTCA's waiver exceptions apply." LeRose v. United States, 285 Fed.Appx. 93 (4th Cir. 2008), cert. denied, 555 U.S. 1170, 129 S.Ct. 1313, 173 L.Ed.2d 584 (2009).

In the instant case, Plaintiff seeks physical and emotional damages after his fall on May 3, 2014. The United States argues that to the extent Plaintiff suffered injuries, those injuries are *de minimis*. *De minimis* injuries are injuries such as a "sore muscle, an aching back, a scratch, an abrasion, a bruise, etc. . . . [like those that] people in the regular and ordinary events and activities in their daily lives do not seek medical care for." Perez v. United States, 330 Fed.Appx. 388, 389 (3rd Cir. 2009); also see Hill v. Crum, 727 F.3d 312 (4th Cir. 2013)(citations omitted)(noting that the following injuries are *de minimis*: bruising, swelling, and loosened tooth; hairline fracture to finger that "required little medical treatment and no pain medication;" severe headache; and back and shoulder aches of limited duration); Chavero-Linares v. Smith, 2013 WL 5655559 (N.D. Iowa Oct. 15, 2013)("a relatively minor scratch or cut and cheek pain, even if this cheek pain was ongoing, is still *de minimis* as a matter of law because [plaintiff] suffered no serious long-term pain and received no medical attention for her injury"); Karavias v. Virginia, 2013 WL 3879701, * 4 (W.D.Va. July 26, 2013)(indicating that plaintiff's bruises and scrapes were *de minimis*); Sublet v. United States, 2011 WL 690533, * 3 (W.D.La. Jan. 28, 2011)(finding a bruise to be *de minimis*), aff'd, 451 Fed.Appx. 458 (5th Cir.), cert. denied, ___ U.S. __, 132 S.Ct. 1961, 182 L.Ed.2d 788 (2012); Homen v. United States, 2002 WL 844347 (S.D.N.Y. May 2, 2002)(finding a three-centimeter abrasion that required only minor first aid, "one or two Tylenols," no difficulty sleeping, and no problem going about his daily routine *de*

*minimis*). Physical pain alone is insufficient to constitute more than a *de minimis* injury. See Calderson, 2007 WL 1010383 at * 8(citation omitted)(physical pain alone is a *de minimis* injury that may be characterized as a mental or emotional injury); Shields v. United States, 2010 WL 2803399 (N.D.N.Y. July 15, 2010)("If plaintiff's injury is *de minimis*, he is not entitled to compensation for pain and suffering."), aff'd, 446 Fed.Appx. 325 (2nd Cir. 2011). Finally, the temporary aggravation of a pre-existing condition is a *de minimis* injury. See Wertish v. Krueger, 433 F.3d 1062 (8th Cir. 2006)(finding minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition to be *de minimis* injuries); Jones v. FCI Beckley Medical Employees, 2013 WL 530861 (S.D.W.Va. January 11, 2013)(finding a forearm contusion and the alleged aggravation of a prior "disc condition" to be *de minimis* where plaintiff's medical records revealed full range of motion, equal strength in bilateral extremities, and no evidence of restriction to daily activities); McKinney v. United States, 2013 WL 4050146 (N.D.Tex. Aug. 9, 2013)(finding lower back pain and minor abrasions to the elbow to be *de minimis* where plaintiff had full range of motion and no evidence of a back injury, other than plaintiff's pre-existing disc degeneration).

Based upon a review of Plaintiff's medical records, the undersigned finds no indication that Plaintiff suffered more than a *de minimis* injury. In his Complaint, Plaintiff alleges that suffered injuries to his ankle, neck, and back during his fall on May 3, 2014. A review of Plaintiff's medical records from December 30, 2013, through June 1, 2015, reveals no evidence of a permanent worsening of Plaintiff's pre-existing conditions. First, the undersigned finds no evidence that Plaintiff suffered more than a *de minimis* injury to his back and neck. On December 30, 2013, Plaintiff was evaluated by Health Services upon his arrival at FCI Beckley.

14

(Document No. 5-1, pp. 19 - 35.) Plaintiff complained of back and neck pain. (Id.) Plaintiff stated he had "a compensation injury from the State of Ohio with chronic neck and back pain which occurred prior to being incarcerated about 2 months ago." (Id.) The x-rays of Plaintiff's lower back and neck were performed on January 8, 2014. (Id., pp. 103 -110.) All x-rays were negative except for mild degenerative disc disease in the lumbar and cervical spine. (Id.) On May 3, 2014, Plaintiff was evaluated following his alleged fall in his cell. (Id., pp. 54 - 56.) Medical staff examined Plaintiff's head and neck noting "no visible injuries to the inmate's head," "no redness, skin intact, no hematoma," and "no decrease in range of motion." (Id.) Medical staff determined there were no significant findings or apparent distress. (Id.) On May 28, 2014, Plaintiff reported to sick call complaining of soreness and stiffness to his neck and back. (Id., pp. 57 - 58.) Plaintiff was examined by medical staff who only noted a limited range of motion secondary to pain and no swelling. (Id.) A repeat x-ray of Plaintiff's back was conducted on June 17, 2014, and was again negative except for mild degenerative disc disease. (Id., p. 118.) Thus, Plaintiff's x-rays revealed no changes to the condition of Plaintiff back and neck. Plaintiff medical records reveal no further complains concerning the alleged injury to his back and neck. Accordingly, the undersigned finds that at most Plaintiff alleges a temporary and slight aggravation of a pre-existing condition which is considered *de minimis*.

Second, the undersigned finds no evidence that Plaintiff suffered more than a *de minimis* injury to his right ankle. During his initial health screening on December 30, 2013, Plaintiff complained of right ankle pain. (Document No. 5-1, pp. 19 - 35.) Plaintiff acknowledged that he injured his ankle prior to his incarceration and medical staff noted "significant swelling to the right ankle both medially and laterally, decreased range of motion due to pain, pain along both

the medial and lateral malleolus with exam, good distal pulses." (Id.) The x-ray of Plaintiff's right ankle performed on January 8, 2014, revealed negative findings. (Id., pp. 103 -110.) On January 9, 2014, Plaintiff was given an ankle brace and a crutch. (Id., pp. 37 - 40, 111 - 112.) On January 22, 2014, Plaintiff reported to sick call complaining that he still had swelling and pain in his right ankle. (Id., pp. 42 - 45.) Plaintiff rated his pain as a 6 on a scale to 10. (Id.) Upon examination, the PA noted that Plaintiff had a limited range of motion and swelling of his right ankle. (Id.) An MRI was ordered. (Id.) The record reveals that Plaintiff turned his crutch in on March 7, 2014, and was issued a walking cane. (Id., p. 47.) On March 28, 2014, medical staff noted that Plaintiff's "right ankle remains swollen and painful" and "he is scheduled for an MRI." (Id., pp. 48 - 53.) On May 3, 2014, Plaintiff was evaluated following his alleged fall in his cell. (Id., pp. 54 - 56.) Medical staff examined Plaintiff's right ankle noting swelling to the medial ankle, "no bruising or redness," "decreased active range of motion," and "unable to tolerate attempts of passive range of motion." (Id.) Medical staff concluded there were no significant findings or apparent distress other than chronic swelling to the right ankle. (Id.) On May 28, 2014, Plaintiff reported to sick call complaining of continued ankle pain. (Id., pp. 57 - 58.) Plaintiff rated his pain as a 6 on a scale to 10. (Id.) A repeat x-ray of Plaintiff's right ankle was performed on June 3, 2014, and revealed negative findings. (Id., p. 115.) The MRI of Plaintiff's right ankle was performed on July 7, 2014, revealing tenosynovitis[3] with no evidence of complete tendon disruption, no ligamentous disruption, no acute fracture, and diffuse soft tissue swelling. (Id., p. 119.) On July 11, 2014, Plaintiff continued to complain of right ankle pain. (Id., pp. 59 - 64.) Plaintiff rated his pain as a 5 on a scale to 10. (Id.) On July 21, 2014,

---

[3]   Tenosynovitis is inflammation of the tendon.

Plaintiff reported to sick call complaining of continued right ankle pain and swelling. (Id., pp. 65 - 67.) Plaintiff rated his pain as a 5 on a scale to 10. (Id.) Upon examination, medical staff noted that Plaintiff's right ankle had mild swelling and normal range of motion. (Id.) On September 16, 2014, Plaintiff reported to sick call complaining of continued pain and swelling of his right ankle that "has been persistent since incarceration." (Id., pp. 71 - 73.) Plaintiff rated his pain as a 6 on a scale to 10. (Id.) Upon examination, medical staff noted "minimal right ankle swelling which is slightly tender to touch" and "decreased dorsi-flexon due to pain but otherwise has good range of motion." (Id.) On January 15, 2015, Plaintiff continued to complain of right ankle pain. (Id., pp. 85 - 91.) Upon examination, medical staff noted tenderness to the ankle joint, no significant swelling, and decreased range of motion. (Id.) On June 1, 2015, Plaintiff reported to sick call complaining of continued right ankle pain. (Id., pp. 99 - 101.) Plaintiff rated his pain as a 3 on a scale to 10. (Id.)

Although Plaintiff contends that his "ankle was on the road to recovery" and "it was not swollen" prior to his fall on May 4, 2014, his medical records do not support his claim. Plaintiff was clearly complaining of swelling to his right ankle approximately one month prior to his fall. Additionally, there is no indication that Plaintiff's level of pain increased following his fall. The record reveals that Plaintiff rated his pain at a 6 prior to his fall, and Plaintiff never rated his pain at more than a 6 after his fall. Finally, Plaintiff now argues that his condition is worse following his fall because he is required to "use a cane a lot of the time." The record, however, reveals that Plaintiff was using a cane prior to his fall. Additionally, Plaintiff alleged in his Complaint that he was using his cane at the time of his fall. Accordingly, the undersigned finds that at most Plaintiff alleges a temporary and slight aggravation of a pre-existing condition which is

considered *de minimis*. The undersigned, therefore, respectfully recommends that the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' "Motion to Dismiss For Lack of Subject Matter Jurisdiction" (Document No. 5), and **DISMISS** Plaintiff's Complaint (Document No. 1), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties,

District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 25, 2016.

Omar J. Aboulhosn
United States Magistrate Judge

19