# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

GREGORY CARTER,

           Plaintiff,

v.                                                                   CIVIL ACTION NO. 5:15-cv-04984

UNITED STATES OF AMERICA,

           Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Document 79), the *Memorandum in Support of United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Document 80), the *Plaintiff's Response to United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Document 85), the *United States' Reply to Plaintiff's Response to Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Document 89), the *Plaintiff's Surreply to United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Document 107), and the *United States' Response to Plaintiff's Surreply* (Document 108). For the reasons stated herein, the Court finds that the motion to dismiss should be denied.

## PROCEDURAL HISTORY

The Plaintiff, Gregory Carter, initiated this action with a *Complaint* (Document 1) filed on April 21, 2015, seeking relief under the Federal Tort Claims Act (FTCA) for injuries sustained in a fall when his cell at FCI-Beckley flooded. The United States filed a motion to dismiss, asserting that the Plaintiff's injuries were de minimis, and that the United States had not waived sovereign

immunity for de minimis injuries. Prior to responding to the motion to dismiss, Mr. Carter's first counsel withdrew, and Mr. Carter, who was then incarcerated, proceeded pro se. The Court referred the matter to a Magistrate Judge for submission of proposed findings of fact and recommendation for disposition. The Magistrate Judge recommended dismissal, and this Court adopted that recommendation. Mr. Carter appealed, and the Fourth Circuit vacated and remanded, explaining that the statutory provision excluding de minimis injury from potential recovery governed emotional injury, while Mr. Carter sought recovery for physical injury, and factual disputes were intertwined with the merits of Mr. Carter's suit, precluding judgment on a motion to dismiss. The factual background contained herein is drawn from the Court's prior opinion, the Fourth Circuit's opinion, the Plaintiff's complaint, and the documents filed by the parties, including supplemental briefing and exhibits submitted after the completion of discovery.

Following remand, the Magistrate Judge appointed counsel to represent the Plaintiff, and the briefing discussed herein was submitted by counsel.

## FACTS

Mr. Carter was an inmate at FCI-Beckley during the relevant time period. He arrived with a pre-existing ankle injury and complained of back, neck, and right ankle pain. He was issued an ankle brace and a crutch. On March 7, 2014, he returned the crutch and received a walking cane. The doctor re-evaluated him on March 28, 2014, found that his right ankle remained swollen, and prescribed Ibuprofen and Amitriptyline. Mr. Carter reports that his ankle was improving during the following weeks.

On or about May 3, 2014, between 5:00 and 6:00 a.m., Mr. Carter awoke to find his cell filled with two inches of standing water. He complained to Correctional Officer Lagowski and

requested assistance. Correctional Officer Lagowski was responsible for patrolling the housing unit during the morning shift, which ran from midnight to 8:00 a.m. Thirteen to fifteen officers are normally scheduled at the institution for that shift. The day shift, which runs from 8:00 a.m. to 4:00 p.m., is staffed with twenty-one to twenty-five officers. Officer Lagowski called Lieutenant Pritt to report the water issue, and Lieutenant Pritt told Officer Lagowski they would deal with it at shift change. For the unit where Mr. Carter was housed, Lieutenant Pritt testified that a shift change in which an additional officer would be available was scheduled to take place shortly after the call.[1] Officer Lagowski told Mr. Carter he would have to wait until shift change before the water could be drained.

When Mr. Carter, still reliant on a cane due to his ankle injury, attempted to cross his cell to reach the toilet, he slipped in the water, fell, and injured his ankle and back. He again called for Officer Lagowski. Following another call to Lieutenant Pritt, Officer Lagowski ordered Mr. Carter to walk to Lieutenant Pritt's office. Lieutenant Pritt sent a compound officer to assist in bringing Mr. Carter to his office.[2] Mr. Carter fell a second time while attempting to cross his flooded cell, hitting his head on a wall locker and injuring his neck. Officers accompanied him to the Lieutenant's office, ridiculing him and accusing him of faking his injury. He was punished with six days in the Special Housing Unit and a ninety-day loss of email and commissary privileges. Lieutenant Pritt contended that Mr. Carter should not have activated the duress button, but the discipline was the result of disrespect and insolence toward Officer Lagowski.

---

1 The timeline of both the calls and the staff schedules is unclear. Mr. Carter reports making the first call between 5:00 and 6:00 a.m. Lieutenant Pritt believes the first call was around 6:15, and the second call about five minutes later.
2 Compound officers are responsible for controlled moves and emergency situations within the institution, and two are scheduled during every shift.

Mr. Carter went to the clinic on the same day, May 3, 2014, and reported aching, nagging pain in his right ankle. His ankle was x-rayed and bandaged. He continued complaining of pain in the following weeks and months and required ongoing treatment.

## STANDARD OF REVIEW

*A. Motion to Dismiss for Lack of Jurisdiction – Rule 12(b)(1)*

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. "In contrast to its treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988) (but explaining that a court should accept the allegations in the complaint as true when presented with a facial attack that argues insufficiency of the allegations in the complaint). Reasonable discovery may be necessary to permit the plaintiff to produce the facts and evidence necessary to support their jurisdictional allegations. *Id.* The plaintiff has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Dismissal for lack of subject matter jurisdiction is proper only if there is no dispute regarding the material jurisdictional facts and the moving party is entitled to prevail as a matter of law. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## DISCUSSION

The United States moves to dismiss the Plaintiff's complaint, invoking the discretionary function exception to the FTCA. It argues that Lieutenant Pritt and Officer Lagowski exercised

discretionary judgment in determining whether to open Mr. Carter's cell to address the water leak, and no mandatory policy prescribed any specific course of action. It cites the safety and security of the institution, inmates, and officers as the policy implicated by the decision to wait to open the cell. The United States further contends that the factual disputes relied on by the Plaintiff relate to the negligence allegation and cannot appropriately be considered if the discretionary function exception applies.

Mr. Carter argues that the Bureau of Prisons has a mandatory duty to "provide suitable quarters and provide for the safekeeping, care and subsistence of all [federal inmates,]" and therefore lacked discretion to force him to remain in an unsafe, flooded cell. (Pl.'s Resp. at 2, quoting 18 U.S.C. § 4042.) He further contends that the jurisdictional issue is intertwined with the merits, and the disputed facts should be decided at trial.

The FTCA established federal jurisdiction for tort claims against the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). 28 U.S.C. § 2680(a) provides that the waiver of sovereign immunity for the FTCA "shall not apply to any claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The discretionary function exception applies to conduct that "involves an element of judgment or choice" and "that judgment is of the kind that the discretionary function exception

was designed to shield." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Id*. at 537. The discretionary function exception applies to decisions made pursuant to a delegation of authority by Congress to implement general provisions of a regulatory statute. *United States v. Gaubert*, 499 U.S. 315, 323 (1991). "In addition, the actions of Government agents involving the necessary element of choice and grounded in the social, economic, or political goals of the statute and regulations are protected." *Id.*

The Fourth Circuit has described the evaluation of the discretionary function exception as a "two-step analysis," beginning with determining "whether the conduct in question involves an element of judgment or choice." *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017) (internal quotation marks and citation omitted). "Second, when the challenged conduct is the product of judgment or choice, the court must still determine whether the decision made was 'based on considerations of public policy.'" *Id*. (quoting *Berkovitz*, 486 U.S. at 537). The Fourth Circuit further noted that "[b]ecause waivers of sovereign immunity must be strictly construed, the plaintiff bears the burden of demonstrating jurisdiction and showing that none of the FTCA's exceptions apply. *Id*. at 127.

The Court finds that the first prong of the discretionary function exception is satisfied. Although the BOP is required by statute to provide safe quarters, the statute does not demand particular action in response to specific circumstances or incidents. How to handle a flooded cell involves an element of choice that may turn on the particular circumstances.

The Fourth Circuit's recent analysis in *Wood* is particularly instructive as to the second prong of the analysis. In *Wood*, a Navy base permitted local law enforcement officers to use its facilities for training purposes. A deputy was injured when she jumped from a training structure onto a set of mats and fell into a gap between the mats. *Wood*, 845 F.3d at 125. The Fourth Circuit found that her claims were barred by the discretionary function exception because the relevant statutory scheme, as well as policies, provided military officers with discretion regarding use of facilities by civilian law enforcement. *Id*. at 130. The court concluded that the decisions to leave the mats in their allegedly dangerous condition, infrequently inspect the training facility, and not warn civilian trainees about the condition "fall comfortably within [the] overarching policy of balancing open civilian use, civilian safety, military preparedness, and costs." *Id*. at 131. However, the court carefully distinguished its holding from premises liability cases with no "statutory, regulatory, or internal policy…encompassing the…decisions." *Id.* (explaining that "the requirement that shielded conduct be taken pursuant to specific policies expressed in federal law explains some of those courts' reluctance to apply the discretionary function exception") (emphasis in original).

The decision of whether to leave inmates in a flooded cell does not appear on its face to implicate policy considerations. The public policy in question, according to the United States, was safety and security within the prison.[3] In other words, because the incident occurred in early morning hours with reduced staff, Officer Lagowski and Lieutenant Pritt had to weigh the competing interests of Mr. Carter's safety in a flooded cell against the safety and security of the

---

3 Construed broadly, the United States' position would essentially eliminate FTCA claims within the prison context. Prison employees have discretion in decisions related to the safekeeping of inmates, it reasons, and so decisions that can be viewed as implicating safety, security, order, and discipline within prisons fall within the discretionary function exception. The Court finds that the second prong requires more than vague allusions to safety.

correctional officer and other inmates that could be threatened by opening a cell without sufficient staff present. But there is evidence that additional officers were available. When Lieutenant Pritt decided to treat the incident as a disciplinary issue, a compound officer arrived to escort Mr. Carter to the office within minutes. The discretionary function exception applies only if the officers were exercising judgment based on considerations of public policy, and there were no public policy considerations absent the safety issue that arises only if officers were unavailable. *See, e.g.*, *Chang-Williams v. Dep't of the Navy*, 766 F. Supp. 2d 604, 619 (D. Md. 2011) ("For a choice to be truly discretionary there must be some necessary consideration of two or more real alternatives that fundamentally relate to policy choices.") Therefore, the Court finds that the application of the discretionary function exception turns on disputed factual issues that are intertwined with the merits of the case, and the United States' motion to dismiss should be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Document 79) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: July 1, 2019

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA